**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**EASTERN DIVISION**

**MIKE FORADORI, AS GUARDIAN**
**FOR THE PERSON AND ESTATE OF**
**MICHAEL FORADORI, JR., A MINOR,**
**LANE FURNITURE INDUSTRIES, INC.**                                    **PLAINTIFFS**


**VS.**                                           **CIVIL ACTION NO. 1:03CV669-MD**


**CAPTAIN D'S, LLC, AND**                            **DEFENDANT/THIRD PARTY**
                                          **PLAINTIFF/CROSS-PLAINTIFF**
**AND**

**JIM WALTER HOMES, INC.**              **DEFENDANT/CROSS-DEFENDANT**


**VS.**

**CASTLE & ASSOCIATES, P.A., ET AL**          **THIRD PARTY DEFENDANTS**

**MEMORANDUM OF AUTHORITIES**
**IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

COMES NOW Defendant Captain D's, LLC  (hereinafter "Captain D's"), by and through

counsel, and, pursuant to F.R.C.P. 56 and Uniform Local Rule 7.2, submits the following

Memorandum of Authorities in Support of its Motion for Summary Judgment as to all claims

asserted by Plaintiff Michael Foradori, Jr. ("Foradori"):

## I.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     Factual Background[1]

On December 22, 2000, Michael Foradori, Jr. was pushed from a retaining wall located

on a commercial property owned by Jim Walter Homes, Inc, situated south of and immediately

adjacent to the Captain D's premises on North Gloster Street, in Tupelo, Mississippi.  Foradori

---

[1]   The factual details related to the individual claims against Captain D's are discussed *infra*.

fell over the retaining wall and landed on the parking lot of Jim Walter Homes.  As a result of this accident, Foradori sustained a severed spine and is now a paraplegic with only limited use of his upper extremities.

**B.**     **Procedural Background**

This lawsuit has an extensive procedural history and numerous pleadings have been filed. Relative to this Motion, the Amended Complaint ("the Complaint") was filed on June 10, 2005 containing a myriad of claims against Captain D's.  See Exhibit A, Amended Complaint.  In the Complaint, Foradori asserts a premises liability claim against Captain D's and co-defendant Jim Walter Homes, Inc.  Id.[2], ¶¶ 3.2.1 & 3.2.9.  Additionally, through the doctrine of respondeat superior, Foradori asserts claims against Captain D's of negligence, negligent hiring, ratification, and failure to supervise and adequately train employees.  Id., ¶¶ 3.2.2 - 3.2.8 & 3.2.10.  On June 21, 2005, Captain D's filed its answer to the Amended Complaint denying all of these claims.  See Exhibit B, Answer and Defenses of Captain D's, LLC, to First Amended Complaint, and Crossclaim.

The trial of this matter is set for October 3, 2005.  The discovery deadline of July 5, 2005, has expired.  Accordingly, this Motion is ripe for adjudication.

## II.     ARGUMENT AND AUTHORITIES

**A.**     **Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure provides for entry of summary judgment where it appears from the review of the pleadings, depositions, interrogatory answers, admissions and affidavits that "there is no genuine issue as to any material fact and the moving

---

[2]   Most likely due to a clerical error, paragraph 3.2 (and its sub-paragraphs) of the Complaint is identical to paragraph 3.3 (and its sub-paragraphs) of the Complaint.  For the purpose of simplifying this Motion, Captain D's will refer only to Paragraph 3.2 (and its sub-paragraphs).

party is entitled to judgment as a matter of law." The purpose of the rule is to expedite the determination of claims without the necessity of a full trial.

Once a motion has been made, the party against whom it was brought must set forth specific facts showing there is a genuine issue for trial. This has been construed to mean that "mere general allegations which do not reveal detailed and precise facts" will not be sufficient to overcome the motion. Liberty Leasing Co. v. Hillsum Sales Corp., 380 F.2d 1013, 1015 (5th Cir. 1967). In other words, the party opposing the motion must show with "significant probative evidence" that there exists a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 327, 106 S. Ct. 2548 (1986); see also Fed. R. Civ. P. 56(c). Finally, where jurisdiction is based on diversity of citizenship, such as this case, the elements of proof imposed on the Plaintiff is governed by Mississippi law. Erie R.R. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938). Application of this standard to the present case mandates entry of summary judgment as to all claims asserted by Foradori against Captain D's.

**B.** **All Claims for Negligence, Negligent Hiring, Negligent Retention and Negligent Training & Supervision Should Be Dismissed**

**1.     Undisputed Facts Related to Negligence Claims**

On the evening of December 22, 2000, Foradori had been at the Barnes Crossing mall with his friend, Tiffany Crump. See Exhibit F, Foradori Depo. Excerpts, pp. 41–42. Thereafter, Crump dropped Foradori off at Captain D's to wait on Jeremy Shell, who was working at Captain D's, to get a ride home. Id. After arriving at Captain D's, Foradori ate[3] and then waited on Shell. Id. at 44-

---

[3]  There are some limited factual inconsistencies about whether Foradori purchased food or was given food while waiting on his friend at Captain D's. However, for the purposes of this Motion only and viewing the facts in the light most favorable to Foradori, Captain D's will stipulate that Foradori purchased food at Captain D's on the evening of this accident. Thus, for the purposes of this Motion only, there is no dispute that Foradori was an invitee while on the premises of Captain D's.

45.  Sometime thereafter, Foradori exited the Captain D's restaurant.[4]  Id. at 47.  Foradori recalls walking across the Captain D's parking lot and stepping onto the grassy strip between the Captain D's parking lot and the retaining wall constructed, owned and controlled by Jim Walter Homes.  Id. at 47-48; see also Exhibit C, Jim Walter Homes, Inc.'s Responses to First Set of Interrogatories & Request for Production of Documents Propounded by Captain D's, LLC, Response to Int. No. 21; and Exhibit D, Jim Walter Homes, Inc.'s Responses to First Set of Requests for Admissions Propounded by Captain D's, LLC, Responses to Req. for Adm. Nos. 1, 2, 5 & 10.  Although Foradori has no recollection of what happened after he stepped onto the grass, Gary Harris (an employee of Captain D's who had "clocked out" and exited the Captain D's restaurant) has admitted that he pushed Foradori and that Foradori fell from the retaining wall onto the parking lot of Jim Walter Homes.  See Exhibit G, Harris Depo. Excerpts, pp. 33-35 & 42-44; Exhibit E, Captain D's Employee Timesheets.  Harris was later convicted of simple assault as a result of this incident.  See In Re G.L.H., 843 So. 2d 109, 112 (Miss. Ct. App. 2003) (affirming Harris's conviction of simple assault).

### 2.      No Vicarious Liability Exists for Harris's Negligent or Intentional Act

The Complaint alleges that Captain D's is vicariously liable for Gary Harris pushing Foradori over the retaining wall.  See Exhibit A, Amended Complaint, ¶ 2.5.  The Complaint asserts that vicarious liability exists merely because Harris was wearing his Captain D's uniform at the time of the accident and because he had been working at Captain D's earlier that night.  Id.  However, these facts simply do not meet the standard for vicarious liability under Mississippi law.

---

[4]  There are limited factual inconsistencies about why Foradori exited the restaurant --- whether it was simply to leave Captain D's to engage in horseplay with other teenagers or whether it was due to an argument over a girl between Foradori and Al Cannon, an employee of Captain D's who had "clocked out" prior to this accident.  Despite the fact that the reason Foradori left the restaurant is irrelevant, for the purposes of this Motion only and viewing the facts in the light most favorable to Foradori, Captain D's will stipulate that Foradori left the restaurant due to an argument with Al Cannon.

It is well established by Mississippi case law that vicarious liability, or master and servant liability, is determined not by the time, location, or manner of the act, but rather "whether, from the nature of the act itself as actually done, it was an act done in the master's business, or wholly disconnected therefrom by the servant, not as servant, but as an individual on his own account." Holliday v. Pizza Inn, Inc., 659 So. 2d 860, 864 (Miss. 1995) (quoting Canton Cotton Warehouse Co. v. Pool, 28 So. 823 (Miss. 1990)).  The test for vicarious liability has been further explained as a determination of whether the servant, or employee, was doing any act in the furtherance of his master's, or employer's, business.  Holliday, 659 So. 2d at 864 (Miss. 1995) (citing Barmore v. Vicksburg, S. & P. Ry. Co., 38 So. 210 (Miss. 1905)).

> If a servant, having completed his duty to his master, then proceeds to prosecute some private purpose of his own, **the master is not liable**.

Id. (emphasis added).

In Holliday, Plaintiff Holliday was a friend of the Pizza Inn manager, Crystal McGrew. Following a Little League baseball game, Holliday, McGrew, and others went to the Pizza Inn. Later that night, after McGrew and other employees were no longer "on the clock," a group of friends decided to gather at the Pizza Inn and have a party.  Even later in the night in the parking lot of the Pizza Inn, a fight between Holliday and another person at the party ensued, and Holliday was stabbed and injured.  Holliday sued Pizza Inn under a theory of vicarious liability and premises liability.

The trial court granted Pizza Inn summary judgment on all claims.  In upholding the summary judgment, the Mississippi Supreme Court emphasized that vicarious liability is not determined by the location of an act or whether acts of employees of Pizza Inn caused or contributed to the injury, but whether the act by the employee was done in the furtherance of the employer's business.  Holliday, 659 So. 2d at 864.  Other Mississippi precedent has likewise held

that actions of employees, such as those of Harris, not performed in the furtherance of the employer's business are outside of the course and scope of employment. See Patton v. Southern States Transp., Inc., 932 F. Supp. 795 (S.D. Miss. 1996), aff'd, 136 F.3d 1328 (5th Cir. 1998) (finding an assault and battery committed by truck driver did not render his employer liable under respondeat superior because the assault did not further the employer's interests); Thatcher v. Brennan, 657 F. Supp. 6 (S.D. Miss. 1986), aff'd, 816 F.2d 675 (5th Cir. 1987) (finding that employer of pharmaceutical salesman, who committed assault and battery while apparently engaged in his employment, was not liable as the assault constituted the salesman's "purely personal objectives, and did not further the interests of the employer"); May v. VFW Post No. 2539, 577 So. 2d 372 (Miss. 1991) (assault and battery committed by off duty janitor did not render the VFW Post liable as his employer because the employee deviated from his employment and the employer received no benefit from his conduct).   In order to impose liability on an employer for the actions of an employee, the action complained of must be "of the same general nature as the conduct authorized or incidental to that conduct."   Adams v. Cinemark USA, Inc., 831 So. 2d 1156, 1159 (Miss. 2002) (citing Bell Tel. & Tel. Co. v. Quick, 149 So. 107, 109 (Miss. 1933)).

In Cinemark, the defendant employed Weigelia Thomas in its box office, where her duties included selling tickets to patrons and handling money.   Id. at 1157.   When Thomas refused to sell the plaintiff, Adams, a ticket for her underage daughter to an R-rated movie, Adams requested to see a manager.   Id.   After a verbal altercation between the two, Adams moved to enter the theater; at that point, Thomas left her post in the box office and confronted Adams at the theater entrance, subsequently striking and attempting to choke Adams[5].   Id.   After Adams filed suit against Cinemark (Thomas's employer) under theories of negligent hiring,

---

[5] Thomas subsequently pled guilty to charges of simple assault.

negligent training and negligent supervision, the trial court granted Cinemark's motion for summary judgment on the grounds that "Thomas had abandoned her employment and was about some purpose of her own, not incidental to her employment and not done in the course of and as a means to the accomplishment of the purposes of her employment as a box office cashier". Id. at 1158.

In affirming this ruling, the Mississippi Supreme Court found that an employer is liable for "the torts of his employee only when they are committed within the scope of employment". Id.; see also Odier v. Sumerall, 353 So. 2d 1370, 1372 (Miss. 1978) (same).

> To be 'within the scope of employment', the act must have been committed in the course of and as a means to accomplishing the purposes of the employment and therefore in furtherance of the master's business. Sears, Roebuck & Co. v. Creekmore, 199 Miss. 48, 23 So. 2d 250, 252 (1945); Alden Mills v. Pendergraft, 149 Miss. 595, 115 So. 713, 714 (1928). Also included in the definition of "course and scope of the employment" are tortious acts incidental to the authorized conduct. Creekmore, 23 So. 2d 252. Stated another way, a master will not be held liable if the employee "had abandoned his employment about some purpose of his own not incidental to the employment". [citations omitted] That an employee's acts are unauthorized does not necessarily place them outside the scope of the employment if they are the same general nature as the conduct authorized or incidental to that conduct. [citations omitted]

Cinemark, 831 So. 2d at 1159. Again, in affirming the trial court's grant of summary judgment in favor of Cinemark, the Supreme Court found it "obvious that Thomas's tortious act of assaulting Adams was not authorized or in furtherance of Cinemark's business". Id. The Court then examined whether the conduct was "incidental to" Thomas's employment; specifically, the Court found significant that Thomas's only job duties were to sell tickets and handle money, not to argue with or confront patrons. Id. at 1159. In finding that Thomas' assault of Adams "was not incidental to her employment", the Court distinguishes that case from others cited by Adams wherein employers were held liable for intentional force of their employees. Id. at 1160. In doing so, the Mississippi Supreme Court specifically found that in the cases where liability was imposed, "the employee was

performing his authorized duties, being driving a cab, protecting inventory, adjusting insurance claims, selling a sewing machine, or ejecting tenants.  These cases are distinguishable from facts in the instant case because Thomas's act was motivated by personal animosity.  She was never vested with any duty on that date other than selling tickets.  She assaulted Adams because of anger, not because she was concerned about protecting Cinemark's property or increasing Cinemark's profit." Id.

In the instant case, Harris was employed as a cook by Captain D's, and his job duties involved working in the kitchen in the preparation of meals purchased by customers.  See Exhibit G, Harris Depo. Excerpts, pp. 15 & 36.  Specifically, according to Anthony Ferguson, the Captain D's manager on duty on the night of Foradori's injury, "[Harris] cooked the fish, battered the fish."  See Exhibit I, Ferguson Depo. Excerpts, pp. 43-44.  Mr. Ferguson further testified that Harris's responsibilities or duties with Captain D's did not involve interacting with patrons of Captain D's. Id. at p. 44. At the time of this accident, Harris had "clocked out," had exited the Captain D's restaurant, and purportedly was leaving the premises on his way home.  See Exhibit "G", Harris Depo. Excerpts, pp. 33–35; see Exhibit I, Ferguson Depo. Excerpts, p. 44. Upon exiting the restaurant, Harris then saw Foradori standing in the grassy median between the Jim Walter Homes' retaining wall and the Captain D's parking lot, and at that point in time decided to push Foradori. Specifically, Harris testified as follows:

> Well, when I had clocked out I had went outside.  When I had went outside I had seen everybody outside playing around. . . .  So when I got off work, I went outside and I seen everybody standing around, and so I seen Michael with his back turned.  So I was going to creep up behind him and, you know, scare him a little bit.  And I ran up behind him and I had pushed him, . . . .

See Exhibit G, Harris Depo. Excerpts, p. 28.  Harris has further testified in this cause that he made the decision to push Foradori only after he exited the Captain D's restaurant via the front

door, after completing his shift and clocking out, and that no more than ten (10) seconds elapsed between the decision to push Foradori, and the actual contact occurring.  Id. at 33-35.  Clearly, there is no evidence that Harris's pushing Foradori had anything to do with Harris's employment as a cook at Captain D's.  Whatever the motivation behind this action it was certainly not done in the furtherance of the business of Captain D's; as in the Cinemark case, Harris's pushing of Foradori was motivated solely by personal reasons.  Based on the Cinemark case and other applicable Mississippi authorities, Plaintiff's claims asserted against Captain D's based on a respondeat superior/vicarious liability theory have no basis in law and are ripe for dismissal, with prejudice.

**3.      No Evidence Exists to Support Negligent Hiring Claims**

The Complaint asserts that Captain D's was negligent in hiring Harris because Captain D's knew or should have known that he was a person with violent propensities.  See Exhibit A, Amended Complaint, ¶ 3.2.5.  The specious nature of this claim is revealed by the fact that there is absolutely no evidence to support this allegation.  Moreover, all evidence of Harris's demeanor developed in this case is that he was known as a quiet individual with no history of violent conduct.

In Jones v. Toy, the Mississippi Supreme Court recognized an employer's duty to exercise due care in hiring and held that an employer may be charged with an employee's negligence and may be liable for resulting injuries "if the master knew or should have known" of the employee's incompetence.  476 So. 2d 30, 31 (Miss. 1985). The Court in Eagle Motor Lines v. Mitchell, 78 So. 2d 482 (Miss. 1955) delineated a more specific rule regarding negligent hiring, stating:

> A good statement in regard to the master's duty in connection with the employment and retention of servants, and pointing out when he may be guilty of

negligence in these particulars, is found in 57 C.J.S., Master and Servant, § 559, pages 270-271, as follows: '*A master may be liable for injuries inflicted on a third person by his servant where he was guilty of negligence in selecting a servant incompetent or otherwise unfit to perform the services* for which he was employed, and this is *especially true where the services required the use of instrumentalities which are very dangerous* if not skillfully handled. *The master*, in selecting an employee, *must exercise a degree of care commensurate with nature and danger* of the business in which he is engaged and the nature and grade of service for which the servant is intended . . . .

Although the Mississippi Supreme Court has apparently not specifically addressed a negligent hiring claim based on an employee's alleged propensity for violence, in <u>Thatcher v. Brennan</u>, Judge Lee addressed such a claim and applied Mississippi law.  657 F. Supp. 6 (S.D. Miss. 1986), *aff'd* 816 F.2d 675 (5th Cir. 1987).  In <u>Thatcher</u>, an assault and battery victim brought a tort action against his assailant, Bert Brennan, and the assailant's employer, Mead Johnson and Company.  The Court concluded that in such a negligent hiring case, the plaintiff must prove that:

a.   the employee had a propensity for violence,

b.   the employer knew or should have known of such propensity, and

c.   the employer, in disregard for the rights of those persons with whom the employee could reasonably be expected to come into contact, hired the employee, either negligently, or with callous disregard for the rights of such persons.

<u>Thatcher</u>, 657 F. Supp. at 11.  In applying the first part of this test, the Court defined "propensity" as "a natural inclination: innate or inherent tendency."  <u>Id.</u> (citations omitted).  The Court explained that it is not sufficient that the plaintiff prove a "mere possibility of violence," but rather "there must be proof that the employee/assailant was a person of known vicious character or one whom the employer should have known had a vicious character."  <u>Id.</u> (citations omitted).  In <u>Thatcher</u>, like the case <u>sub judice</u>, the only evidence of actual violent conduct by the

employee was the altercation between him and the plaintiff which was the subject of the lawsuit. Accordingly, the <u>Thatcher</u> Court granted summary judgment in favor of the employer.

In the more extreme negligent hiring case of <u>Patton v. Southern States Trans.</u>, the employee, Tommy Nash, actually had a criminal record at the time of hire for possession of a dangerous weapon, possession of cocaine with intent to sell, simple possession of cocaine and possession of a firearm with intent to go armed.  932 F. Supp. 795, 801 (S.D. Miss. 1996).  Even under these facts, the Court, applying the <u>Thatcher</u> rationale, granted summary judgment stating that such evidence was not evidence of a propensity for violence, but only evidence of criminal behavior.  <u>Id.</u>

In the case at hand, no evidence exists demonstrating that Harris had a history of violence or similar activity which would have alerted Captain D's of the possibility he would push Foradori from the Jim Walter retaining wall on December 22, 2000.  Harris has testified that he had no criminal record prior to this accident, and there is no evidence to the contrary:

> Q:      Did you have any past criminal history before going to work for Captain D's?
>
> A:      No, sir.
>
> Q:      Did you have any history of violence before going to work for Captain D's where you had been suspended from school or had any type of disciplinary action taken against you?
>
> A:      No, sir.
>
> Q:      Okay.  To your knowledge, was there anything in your background that would have kept Captain D's from hiring you for any reason?
>
> A:      No, sir.

<u>See</u> Exhibit G, Harris Depo. Excerpts, pp. 14–15.  Indeed, testimony of those who worked with him has been consistent that Harris was a quite individual, rather than a bully, who did not have a history of destructive or dangerous conduct.

Q:      Have you ever known Gary Harris to get involved in a fight?

A:      No, sir.

Q:      What kind of guy is Gary, in your opinion?

A:      He's a pretty cool guy.  I mean, I've never known him to get into any fight or anything like that.

Q:      Is he someone you would consider to be a bully?

A:      No, sir.

Q:      We met him this morning.  He's a pretty good sized guy, isn't he?

A:      Yeah, he don't even --- he's nowhere compared to be a bully, because he's more like a coward or more like a weaker person, because I done seen people at school talk to him and he's like --- kind of like just walk away or whatever.

See Exhibit H, Cannon Depo. Excerpts, pp. 34–35.  Clearly, there is no evidence that Harris had any propensity for violence that Captain D's knew or should have known about prior to hiring him.  In fact, the evidence is to the contrary; Foradori himself has conceded that he has no reason to believe Harris even intended to cause him injury.  See Exhibit F, Foradori Depo. Excerpts, p. 102.   Accordingly, summary judgment should be granted dismissing the negligent hiring claim.

**4.      No Evidence Exists to Support a Claim of Negligence Through Ratification**

The Complaint further asserts that Captain D's ratified the actions of Harris by failing to immediately terminate his employment following this action.  See Exhibit A, Amended Complaint, ¶ 3.2.8.[6]  However, under the definition of "ratification," as set out in Patton v. Southern States Trans., Captain D's has in no way "ratified" Harris's conduct even if Captain D's chose not to discharge him after this incident.  Furthermore, because Harris was not acting within the course and scope of his employment at the time of this accident, it follows that Captain D's decision not to fire Harris did not rise to the level of "ratification."

---

[6] Although Foradori also asserts a claim of negligent retention in the Complaint, this claim is identical to the "ratification" claim, and, accordingly, will be addressed in conjunction with this claim.

There is no Mississippi Supreme Court case that defines when an employer may be held liable for the actions of an employee because the employer has "ratified" those actions.  However, in <u>Patton v. Southern States Trans.</u>, the Court found that if presented with the specific question, the Mississippi Supreme Court would adopt the following definition of ratification:

> Ratification is the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account, whereby the act, as to some or all persons, is given effect as if originally authorized by him.

932 F. Supp. 795,  800 (S.D. Miss. 1996) (citing Restatement (Second) of Agency § 82 (1958)) (other citations omitted).

In <u>Patton</u>, Tommy Nash, an employee truck driver for Southern States, made a delivery to the Coca-Cola Bottling Company.  While making this delivery, Nash assaulted Plaintiff Jim Patton who was the fleet manager at the Coca-Cola facility.  Following this incident, Southern States took no disciplinary action against Nash for assaulting Patton.  <u>Id.</u> at 800.

In its determination to grant summary judgment in favor of Southern States on the ratification claim, the Court reasoned that, under the definition of "ratification," Southern States had not ratified Nash's actions:

> Nash did not assault Patton on behalf of Southern States. Nor did Southern States originally authorize Nash to assault Patton on its behalf. The definition of ratification impliedly assumes that a principal cannot ratify an act which it would not have authorized in the first place. The Court agrees with this assumption. Furthermore, no benefits accrued to Southern States because of the assault by Nash, its purported agent, upon Patton. The fact that Southern States did not discipline Nash for his assault upon Patton is not sufficient evidence by itself to support Patton's theory that Southern States ratified the actions of Nash. For these reasons the Court finds that no genuine issue of material fact exists concerning the ratification issue, and Southern States is therefore entitled to summary judgment on this issue.

<u>Id.</u> at 801.  <u>See also</u> <u>Craft v. Magnolia Stores, Co.</u>, 138 So. 405, 407 (Miss. 1931) (finding employer not liable due to retention of negligent employee). As in the <u>Patton</u> case, Harris did not assault

Foradori on behalf of Captain D's.  Captain D's did not authorize Harris to assault Foradori on its

behalf.  Furthermore, Captain D's in no way benefited because of Harris's assault of Foradori.

Accordingly, the fact that Captain D's did not discipline Harris, or terminate his employment, due to

his sudden and unexpected assault upon Foradori is insufficient evidence, under Mississippi law, to

support Foradori's claim that Captain D's somehow ratified, and became liable for, Harris's actions.

Therefore, summary judgment is appropriate regarding the ratification claim.

### 5.    No Evidence Exists to Support Negligent Training and Supervision Claims or any Claim of an "Atmosphere of Violence"

The Complaint essentially asserts that Captain D's failed to properly train and supervise its

employees and thereby allowed an "atmosphere of violence[7]" to exist or develop on the premises.

See Exhibit A, Amended Complaint, ¶¶ 3.2.2 – 3.2.4 & 3.2.6.  As with the balance of Plaintiff's

claims, there is simply no credible evidence to support these claims.

The law in Mississippi is clear that an "atmosphere of violence" claim exists only where

the property owner has cause to anticipate the wrongful act due to "(1) actual or constructive

knowledge of the assailant's violent nature, or (2) actual or constructive knowledge that an

atmosphere of violence exists on or about the premises."  May v. V.F.W. Post No. 2539, 577 So.

2d 372, 376 (Miss. 1991). See also Kelly v. Retzer & Retzer, Inc., 417 So. 2d 556 (Miss. 1982)

(affirming peremptory instruction in favor of McDonald's restaurant sued after shooting

occurred in parking lot, based, inter alia, on lack of notice to McDonald's prior to incident).

In May, a part-time employee of the VFW, Ricky Triplett, assaulted David May at a

private party at the VFW.  577 So. 2d at 373–74.  In upholding the lower court's grant of

summary judgment, the Mississippi Supreme Court reasoned that there was no evidence that the

VFW should have known of Triplett's impending actions.  Id. at 376.  Additionally, the VFW

---

[7]   Although an "atmosphere of violence" claim is a premises liability claim, Captain D's addresses this claim in this section of its brief due to the manner in which such claim was alleged in the Complaint.

was not a "bar room brawl" type of establishment nor was the area one where frequent fights occurred. Id. The May Court further reasoned that "the fact that the attack or altercation happened in a quick and unexpected manner strikes against [the Plaintiff's] assertion that the [premises owner] was negligent." Id.

In Corley v. Evans, 835 So. 2d 30 (Miss. 2003), the Plaintiff sued a landowner based on an accidental shooting at a crawfish boil. In affirming a judgment notwithstanding the verdict rendered in favor of the defendants, the Mississippi Supreme Court reiterated that a property owner may be held liable only where he had "cause to anticipate the wrongful or negligent act" of an unruly person. Corley, 835 So. 2d at 38 (quoting Grisham v. John Key Long VFW Post No. 4057, Inc., 519 So. 2d 413, 416 (Miss. 1988)). In finding the property owner had no reason to anticipate the action which caused the injury to the plaintiff, the Court gave great credence to the fact that there had been no similar crimes on the premises predating the incident in question. Id. at 38-39. Specifically, the Supreme Court held that "should we set aside the trial court's grant of a JNOV in this case, we would most assuredly be informing premises owners/land owners that they have now become insurers of an invitee's safety". Id. at 38.

In Titus v. Williams, et al, 844 So. 2d 459 (Miss. 2003), the surviving family members of the decedent, Titus, sued a convenience store (The Flash Store) in Sardis, Mississippi after Titus was killed on the premises. In affirming the circuit court's grant of summary judgment in favor of all defendants, the Supreme Court specifically found that "the area in which The Flash Store is located is considerable undesirable. The parking lot had become an area where local crowds of young people gathered during the weekends and holidays. Jr. Food Mart employed a security officer when it occupied the building. The Flash Store had no security personnel. According to the plaintiffs, scuffles, fights, drug deals and other inappropriate and illegal activity often

occurred there". <u>Titus</u>, 844 So. 2d at 462.  On the night in question when Titus was shot, Titus was involved in an altercation with the "Butcher brothers" in the parking lot of The Flash Store. <u>Id</u>.  Approximately forty minutes after this first altercation, the Butcher brothers returned to the store; at that time, Titus again became involved in an altercation with the Butcher brothers which resulted in one of the young men firing two shots at Titus' car, striking the right front tire.  <u>Id</u>. at 463.  Despite being aware of this incident, the owner of The Flash Store refused to call the police to report this shooting.  Shortly thereafter, the Butcher brothers returned to The Flash Store to apologize to the owner for "disrespecting his parking lot" by firing a gun; the owner of The Flash Store again failed to call the police to report that the Butcher brothers were on the premises. <u>Id</u>. At this point, Titus, for the third time, entered The Flash Store premises and engaged in a physical altercation with the Butcher brothers.  <u>Id</u>. at 463-64.  After Titus ultimately ran from the store, one of the Butcher brothers shot twice, fatally wounding Titus.  <u>Id</u>. at 464.  In the Titus family's subsequent lawsuit against, *inter alia*, The Flash Store, the family alleged that "an atmosphere of violence" existed on the premises of The Flash Store, that the owner knew of this "atmosphere of violence", and that the owner failed to do anything to make the store more secure or safe. <u>Id.</u> at 466.  In rejecting this argument, the Court found that although there was evidence supporting the conclusion that Williams and The Flash Store knew of and allowed "an atmosphere of violence" to exist at The Flash Store, "the fact remains that Titus, not Williams or The Flash Store, created and caused this unfortunate event".  <u>Id</u>. at 466.  Under this set of facts, the Supreme Court found the atmosphere of violence to be insufficient to impose liability on the defendant.

In the case at hand, despite Plaintiff's best efforts to create an "atmosphere of violence"[8] there is simply no evidence that such a condition existed on or near the premises of Captain D's.

---

[8]   Discussed in section II.B.3., No Evidence to Support Negligent Hiring Claim.

Additionally, there is no evidence that any altercations, or even any injuries, had occurred at the Captain D's premises prior to this accident, aside from approximately six (6) occasions when patrons tripped over a sidewalk, or parking block, located immediately adjacent to the building. See Exhibit K, Depo. Excerpts of Captain D's 30(b)(6), p. 53. Further, other than the assault at issue in this case, there is no evidence of any other fights or criminal acts having ever occurred on the Captain D's premises, prior to December 22, 2000.

There is absolutely no proof suggesting that Captain D's, by and through its managers on duty, had any cause to anticipate that an altercation could or would ensue or that Harris would push Foradori, thereby causing him injury. See Exhibit G, Depo. Excerpts of Garious L. Harris, pp. 38-39; Exhibit H, Depo. Excerpts of Al Cannon, p. 38; Exhibit I, Depo. Excerpts of Anthony Ferguson, p. 44; Exhibit J, Depo. Excerpts of Peggy King, pp. 50-52. Moreover, as in May Harris's split second decision to push Foradori strikes against Plaintiff's assertion that Captain D's was negligent. See Exhibit G, Harris Depo. Excerpts, p. 28.

Although several former employees testified that on occasion they would play with water guns after hours, these employees further testified that they never engaged in this type of conduct with patrons, such as Foradori, and no injury to any such employee had ever occurred. See Exhibit G, Depo. Excerpts of Garious L. Harris, pp. 75-76; Exhibit H, Depo. Excerpts of Al Cannon, p. 33. In short, there are simply no credible facts in this case which would suggest that Captain D's had actual or constructive notice that an "atmosphere of violence" existed on this premises. Plaintiff seeks to place a virtually untenable duty on Captain D's, being to maintain constant and unrelenting supervision over employees who have clocked out, left the restaurant to go home, and who, en route to their automobile, make a sudden decision to engage in a criminal act. "To hold a premises owner liable under these circumstances would be unconscionable and

would establish the owner an insurer of the safety of all invitees, which is not the law of this State." May, 577 So. 2d at 374.[9]  Accordingly, summary judgment should be granted dismissing all claims of an "atmosphere of violence", including claims of negligent training, or negligent supervision.

**C.    All Premises Liability Claims Should Be Dismissed**

**1.    Undisputed Facts Relating to Premises Liability Claims**

It is undisputed that Foradori was pushed from the subject retaining wall onto the parking lot of Jim Walter Homes.   See Exhibit G, Harris Depo. Excerpts, pp. 33-35 & 42-44.   The retaining wall was constructed, owned and controlled by Jim Walter Homes.  Id. at 47-48; see also Exhibit C, Jim Walter Homes, Inc.'s Responses to First Set of Interrogatories & Request for Production of Documents Propounded by Captain D's, LLC, Response to Int. No. 21; and Exhibit D, Jim Walter Homes, Inc.'s Responses to First Set of Requests for Admissions Propounded by Captain D's, LLC, Responses to Req. for Adm. Nos. 1, 2, 5 & 10.

**2.    Mississippi Law for Premises Liability**

In order for a plaintiff to recover in a premises liability case under Mississippi law, he must prove:

      a.      A negligent act of the defendant caused the injury; or

      b.      That the defendant had actual knowledge of a dangerous condition and failed to warn the plaintiff; or

---

[9] Other jurisdictions are in agreement with Mississippi law in holding that property owners are not insurers of their premises, and are not liable for unforeseeable criminal assaults.  See Vaughn v. The New Addition Club, Inc., 2004 WL 1588103 (Ala. 2004) (reversing lower court decision and entering judgment for defendant due to lack of foreseeability of criminal acts); Winston v. Pool Hand Luke's, Inc., 2003 WL 21235288 (Conn. Sup. 2003) (affirming summary judgment in favor of property owner due to unforeseeability of criminal act); Alvarez v. Jaemar Pacific Pizza Corp., 122 Cal. Rptr. 2d 890 (Cal. App. 2002) (same); Skelkett v. Hardee's Food Systems, Inc., 848 P. 2d 63 (Okla. Civ. App. 1993) (same); Godfrey v. Buddie-Noell Enter., Inc., 843 F. Supp. 114 (E. D. Va. 1994) (same); Brynes v. Keenan, 1987 WL 11446 (Del. Sup. 1987) (dismissing claim based on criminal assault due to the spontaneous and unprovoked nature of the act).  As in these cases, the actions of Harris at issue were spontaneous, unprovoked, and ultimately unforeseeable, thus necessitating entry of summary judgment in favor of Captain D's.

        c.       That the dangerous condition existed for a sufficient amount of time to impute constructive knowledge to the defendant, and that the defendant should have known of the dangerous condition and warned the plaintiff of the dangerous condition.

See Moore v. Winn-Dixie Stores, Inc., et al., 173 So. 2d 603 (Miss. 1965); Munford, Inc. v. Fleming, 597 So. 2d 1282 (Miss. 1992).

The Complaint avers that Captain D's failed to keep its premises in a reasonably safe condition and that it failed to remedy a dangerous condition.   See Exhibit A, Amended Complaint, ¶¶ 3.2.1 & 3.2.9.  The "dangerous condition" alleged by Foradori is the retaining wall from which he fell and was injured. See Exhibit L, photographs of retaining wall.  It is Captain D's position that this retaining wall, which is approximately four feet high, was in no way a dangerous condition or hidden defect.  Indeed, Foradori has testified that the drop off from the top of the retaining wall to the Jim Walter parking lot was open and obvious to him immediately before he was pushed by Gary Harris (see Exhibit F, Depo. Excerpts of Foradori (Jan. 15, 2005), p. 34); as such, no warning to Foradori was necessary.  Nevertheless, Captain D's need not even make this argument, because it did not own, construct or control the retaining wall or the premises on which the retaining wall was located.  Rather, Jim Walter Homes owned that property.  See Exhibit C, Jim Walter Homes, Inc.'s Responses to First Set of Interrogatories & Request for Production of Documents Propounded by Captain D's, LLC, Response to Int. No. 21; and Exhibit D, Jim Walter Homes, Inc.'s Responses to First Set of Requests for Admissions Propounded by Captain D's, LLC, Responses to Req. for Adm. Nos. 1, 2, 5 & 10.  Additionally, Jim Walter Homes owns approximately five feet of the grass strip immediately to north of the retaining wall, separating the retaining wall from the Captain D's parking lot.

Mississippi law requires that a defendant own or control the premises on which an alleged dangerous condition exists before that defendant can be held liable.  Brookhaven Funeral

<u>Home, Inc. v. Hill</u>, 820 So. 2d 3 (Miss. 2002); <u>see also</u> <u>Miller v. Coast Electric Power Assoc</u>, 797 So. 2d 314 (Miss. 2001); <u>Joseph v. Tennessee Partners, Inc.</u>, 501 So. 2d 371 (Miss. 1987).   In <u>Brookhaven Funeral Home</u>, a funeral attendee, Deborah Hill, sued the funeral home for injuries suffered when she fell on the sidewalk in front of the funeral home.  820 So. 2d at 4.  However, although the sidewalk was immediately adjacent to the property of the funeral home, and was utilized by both patrons and employees of the funeral home, the sidewalk was owned and constructed by the City of Brookhaven.

After the jury rendered a verdict in favor of Hill, the Mississippi Court of Appeals reversed the jury's finding and entered a judgment in favor of the funeral home.  In so doing, the Court of Appeals stated that "[w]ho owned or controlled the sidewalk on which Hill fell was part of her necessary prima facie case."  <u>Id.</u> at 6.

> In order to prove liability on the part of an owner or occupant of premises for injuries resulting from the condition of the premises, a plaintiff must, as a preliminary matter, show that the defendant has occupation or possession and control.

<u>Id.</u> (quoting <u>Wilson v. Allday</u>, 487 So. 2d 793, 796 (Miss. 1986)).  There is no dispute in this case that Jim Walter Homes constructed, and had possession and control of, the retaining wall at the time of this accident.  Thus, because Captain D's had neither ownership nor control of the alleged dangerous condition, <u>i.e.</u>, the retaining wall, Captain D's cannot be held liable for a claim founded on such an alleged dangerous condition.  Accordingly, summary judgment should be granted as to all premises liability claims against Captain D's.

**D.**   **No Causal Connection exists between any Alleged Action or**
**Omission of Captain D's, and Injuries sustained by Foradori.**

As in the majority of tort cases, to prevail on his claims herein Foradori must establish the basic elements of a negligence claim, being duty, breach of duty, causation and damages. Dillon v. Greenbriar Digging Serv., Ltd., 2005 WL 1384245 (Miss. Ct. App., June 7, 2005). "To succeed in a negligence claim, the plaintiff must prove both causation and proximate cause.[10] This requirement means that a defendant is not liable 'for damages which are remote or collateral, or which result from a remote, improbable or extraordinary occurrence, although such occurrence is within the range of possibilities flowing from defendant's negligent act.'" Dillon, 2005 WL at *3 (quoting Ware v. State, 790 So. 2d 201, 214 (Miss. Ct. App. 2001)).

In addition to the reasons for dismissal discussed elsewhere herein, Plaintiff's claims are ripe for summary judgment as no evidence of causation exists between any action or omission of Captain D's, and the injuries ultimately sustained by Foradori.  Despite Plaintiff's arguments that events inside the Captain D's, or the alleged hazardous condition of the retaining wall, caused him injury, there can be no dispute that the sole efficient cause of injury was the action of Gary Harris in pushing Foradori.   Indeed, Harris has provided undisputed testimony in this case regarding why and how he came to push Foradori:

> Q.    How much time elapsed between you coming out of the front door of
>
> Captain D's after you clocked out and then going and pushing Michael?

---

[10] As the Court is well aware, proximate cause requires: (1) cause in fact; and (2) foreseeability.  Morin v. Moore, 309 F.3d 316, 326 (5th Cir. 2002).  "Cause in fact" means that the act or omission was a substantial factor in bringing about the injury, and without it the harm would not have occurred.  Ogburn v. City of Wiggins, 2005 WL 1384347 *4 (Miss. Ct. App. May 24, 2005).  " Foreseeability requires a showing that a defendant should have anticipated the danger that his or her negligent act or omission created for others."  Morin, 309 F. 3d at 326.  In regard to foreseeability, the Mississippi Supreme Court has further held that "[a] defendant is *obligated solely to safeguard against reasonable probabilities* and is not charged with foreseeing all occurrences, even though such occurrences are within the range of possibility." Donald v. Amoco Prod. Co., 735 So. 2d 161, 175 (Miss. 1999); see City of Jackson v. Estate of Stewart, 2005 WL 1118213 *8 (Miss. May 12, 2005) (discussing foreseeability).

A.      It wasn't that long because I - - I had some food in my hand, so I sat the

bag down and I ran over to - -

Q.      So you ran?

A.      Well, it wasn't a sprint; it was a little sneaky walk over there.

See Exhibit G, Harris Depo. Excerpts pp. 33-34.

Q.      Would you say it was a matter of seconds between you coming out of the

door and then running over and pushing him?

A.      Yes, sir.

Q.      Could you tell me whether it was maybe more or less than ten seconds?

A.      It was probably right around ten seconds.

Q.      When you went out of the door after you clocked out, did you go outside

then with an intention to find Michael Foradori and to push him?

A.      <u>No, sir.</u>

Q.      Did you decide you were going to push him after you had already gotten

outside?

A.      It wasn't - - would you repeat that?

Q.      I will.  At some point you decided I'm going to go push him for whatever

reason.  When did you make that decision?

A.      <u>When I had went outside.</u>

See Exhibit G., Harris Depo. Excerpts, p. 35 (emphasis added).

According to Harris, therefore, his spontaneous decision to push Foradori was made only <u>after</u> he

had exited the Captain D's restaurant, and only approximately ten (10) seconds before the actual

push occurred.  Harris further testified that his decision to push Foradori was not, in any way,

related to any alleged altercation between Foradori and another Captain D's employee; this testimony, again, is undisputed.  See Exhibit G, Harris Depo. Excerpts, pp. 36-39.

In Newell v Southern Jitney Jungle Co., 830 So.2d 621 (Miss. 2002), the plaintiff was shot by her estranged husband while working at Jitney Jungle; Newell ultimately filed suit against Jitney Jungle based on her injuries. In analyzing her claim, the court reiterated that "negligence which merely furnishes a condition or occasion upon which injuries are received, but does not put in motion agency by and through which the injuries are inflicted, is not the proximate cause thereof".  Newell, 830 So. 2d at 623 (quoting Miss. City Lines v. Bullock, 194 Miss. 630, 13 So. 2d 34, 36 (1943)).  Specifically, the court found that Jitney Jungle's actions "did not impel the assault" by the plaintiff's husband, and that "clearly the intentional act of Newell's estranged husband entering the [grocery store] armed with a gun, forcing entry into Newell's office, and shooting her are acts by a third party which area sufficient to terminate any liability [the grocery store] might otherwise have. If not, this court would impose a duty approaching strict liability on landowners of the type we specifically denounced in Crane v. Cleveland Lodge 1532, 641 So. 2d 1186, 1191 (Miss. 1994)".  Newell, 830 So. 2d at 624.

In Price v. Park Management, Inc., 831 So. 2d 550 (Miss. Ct. App. 2002), a tenant sued an apartment management group based on an assault occurring at her apartment.  After summary judgment was granted in favor of Park Management, the Mississippi Court of Appeals affirmed, in part, due to the absence of any causation connecting the actions of Park Management to the injuries sustained by Price.  Specifically, the Court found that despite the probable existence of a breach of duty by Park Management (i.e., leaving a security gate open and unattended), the actions of others in admitting the assailant into Price's apartment was the proximate cause of her injury, thus mandating dismissal of  Price's claims.  Price, 831 So. 2d at 552-53.  Similarly, in

the case at hand, the sole cause of Foradori's injuries was the spontaneous decision, and unprovoked action, of Harris.[11] To hold Captain D's liable for Foradori's injuries, under the facts in this case, would essentially re-write existing Mississippi law in that it would make business owners absolute insurers of the safety of people entering their premises.   The Mississippi Supreme Court has repeatedly held that this is simply not the law in this State. Based on this lack of proof as to an essential element of Foradori's claims, summary judgment is appropriate as to all claims for this additional reason.

**E.**      **Foradori's Punitive Damage Claim Is Unsupported by Evidence**

Mississippi law concerning the award of punitive damages has been codified at <u>Miss. Code Ann.</u> §11-1-65.  In that regard, the legislative mandate for an award of punitive damages provides that "punitive damages may not be awarded if the claimant does not prove by clear and convincing evidence that the defendant against whom punitive damages are sought acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud".   <u>Miss. Code Ann.</u> §11-1-65(1)(a) (Supp. 2004). Further, "Mississippi does not favor punitive damages; they are considered an extraordinary remedy and are allowed with caution and within narrow limits".   <u>Langston v. Bigelow</u>, 820 So. 2d 752, 757 (Miss. Ct. App. 2002); <u>Life & Casualty Ins. Co. v. Bristow</u>, 529 So. 2d 620, 622 (Miss. 1988).   Punitive damages are only appropriate in the most egregious cases so as to discourage similar conduct, and should only be awarded in cases where the actions are extreme in nature. <u>Paracelsus Health Care Corp. v. Willard</u>, 754 So. 2d 437 (Miss. 1999), <u>rehearing</u>

---

[11] While obviously no injury would have occurred without the action of Harris, Captain D's expert toxicologist in this case, Dr. Rick Carlton, has opined that Foradori's use of marijuana on the day of his injury, as admitted to an emergency room physician shortly after his injury, caused a loss of motor function which rendered Foradori unable to protect himself from injury when pushed.  Specifically, Dr. Carlton testified that <u>but for</u> the "impairment [Foradori] would not have had a cervical spine fracture".  <u>See</u> Exhibit M, Carlton Depo. Excerpts p. 65. Accordingly, this undisputed proof further demonstrates that the alleged actions or omissions of Captain D's were not causally related to any injuries sustained by Foradori.

denied, cert. denied, 120 S. Ct. 2219, 530 U.S. 1215, 147 L.Ed.2d 251; Central Bank of

Mississippi v. Butler, 517 So. 2d 507 (Miss. 1987).  In the case at hand, Plaintiff does not assert

claims based on malice or fraud; accordingly, Plaintiff must argue that Captain D's acted with

gross negligence in a manner causing injury to Foradori.  As noted herein, however, the record

is devoid of any credible evidence suggesting that this was the case.  Indeed, the testimony of

both Harris and Foradori reveal that there was no intent on the part of Harris to cause Foradori

any injury.  See Exhibit G, Harris Depo. Excerpts, p. 34; Exhibit F, Foradori Depo. Excerpts, p.

102.  In the absence of clear and convincing proof by the Plaintiff that some intent existed to

cause harm, all claims for punitive damages must be dismissed.

The disfavor with which punitive damages are viewed is further incorporated into §11-

1-65 itself, by and through its mandate that the defendant "against whom punitive damages are

sought acted with actual malice, gross negligence which evidences a willful, wanton or reckless

disregard for the safety of others, or committed actual fraud".  Pursuant to the clear language of

the statute therefore, punitive damages may not be assessed on a vicarious liability theory.  In

other words, §11-1-65 prohibits the Plaintiff herein from seeking an award of punitive damages

against Captain D's based on the alleged actions or omissions of employees of Captain D's;

punitive damages may only be considered against Captain D's in this cause based on alleged

malicious, grossly negligent, willful, wanton or reckless, or fraudulent conduct of Captain D's

itself.  Of the numerous claims asserted by Plaintiff in this suit, only the Plaintiff's claims of

inadequate hiring, training, supervision and/or retention rationally apply to the Defendant

Captain D's; all remaining claims focus on the alleged actions or omissions of Captain D's staff

for which Plaintiff seeks to hold Captain D's vicariously liable.

The prohibition against basing a punitive damages award on a vicarious liability theory has been addressed by various courts on several occasions.  In Duggins v. Guardianship of Washington, 632 So. 2d 420 (Miss. 1993), Justice Dan Lee discussed this issue in a lengthy dissent.  Duggins involved, in part, a claim against various attorneys for misappropriation of funds, and the Court therein allowed an assessment of punitive damages against an attorney who had no active role in the misappropriation, under a partnership theory.  Duggins, 632 So. 2d at 429-30.  In his dissent, Justice Lee discussed "recently enacted" §11-1-65, which took effect after filing of the Duggins suit, and was therefore inapplicable.  In doing so, Justice Lee unequivocally stated "this statute [§11-1-65] absolutely forecloses vicarious liability for punitive damages in actions arising after the effective date".  See Doe v. Salvation Army, 835 So. 2d 76 (Miss. 2003) (affirming lower court's refusal to submit issue of punitive damages to jury on vicarious liability theory); Hasty v. George, 2000 U.S. Dist. LEXIS 444 *2 (N.D. Miss. January 10, 2000) (declining to assess punitive damages on vicarious liability basis); Decanter v. Builders Transport, Inc., 1996 WL 408844 (N.D. Miss. July 11, 1996) (holding §11-1-65 prohibits award of punitive damages on basis of vicarious liability).   In light of the statutory mandate of §11-1-65 that a defendant may only be assessed punitive damages based on that defendant's own malicious, intentional or fraudulent acts, summary judgment in favor of Captain D's is appropriate as to Plaintiff's request for an award of punitive damages based on the alleged actions or omissions of Captain D's employees, rather than the actions of the corporate defendant itself.

### III. CONCLUSION

It is elemental that once a motion for summary judgment is submitted, the non-moving party "may not rest upon mere allegations or denials in the pleadings, but must present

affirmative evidence, setting forth specific facts, to show the existence of a genuine issue for trial". Whitmire v. Telex Telect, Inc., 2005 WL 1077 628 at *3 (May 5, 2005, E. D. Tex.); See also Rushing v. Kansas City S. Ry. Co., 185 F. 3d 496, 505 (5th Cir. 1999). "Unsubstantiated assertions, improbable inferences, and unsupported speculation" are insufficient to rebut a Rule 56 motion. Whitmore, 2005 WL 1077628 at *4; Brown v. City of Houston, 337 F. 3d 539, 541 (5th Cir. 2003). In the instant case, the Plaintiff merely attempts to use admittedly catastrophic injuries to fabricate a theory of liability, in essence working backwards from the process utilized in a typical case. When scrutinized under the clear light of controlling Mississippi case law, however, none of the myriad of theories asserted by the Plaintiff can survive application of F.R.C.P. 56. For the reasons set forth herein and in the accompanying Motion for Summary Judgment, Defendant Captain D's, LLC respectfully requests the Court to grant the Motion for Summary Judgment in its entirety, dismissing all claims asserted by Plaintiff Michael Foradori, Jr., against Defendant Captain D's, LLC with prejudice, and granting all further and additional relief to which Defendant Captain D's, LLC may be entitled.

RESPECTFULLY SUBMITTED, this the 19th day of July, 2005.

CAPTAIN D'S, LLC, Defendant

BY:   s/L. Bradley Dillard
        L. BRADLEY DILLARD (MB #10114)
        KEVIN B. SMITH (MB #10213)

OF COUNSEL:

MITCHELL, McNUTT & SAMS, P.A.
ATTORNEYS AT LAW
POST OFFICE BOX 7120
TUPELO, MISSISSIPPI  38802-7120
(662) 842-3871

BRADLEY F. HATHAWAY (MB #10203)
CAMPBELL, DELONG &
        WADE, LLP
POST OFFICE BOX 1856
GREENVILLE, MISSISSIPPI 38701
(662)-335-6011

## <u>CERTIFICATE OF SERVICE</u>

I, L. Bradley Dillard, one of the attorneys for Defendant Captain D's, LLC, do hereby

certify that I have this day served a true and correct copy of the above and foregoing

Memorandum Brief in Support of Motion for Summary Judgment of Defendant Captain D's,

LLC on the following counsel via electronic filing only:

|  |  |
|---|---|
| R.H. Burress, III | Robert Bradley Best |
| Post Office Box 787 | Post Office Box 707 |
| Booneville, MS 38829 | Oxford, MS 38655-0707 |
| | |
| Zach Scruggs | Taylor B. Smith |
| Post Office Box 1136 | P. O. Box 827 |
| Oxford, MS  38655 | Columbus, MS 39703-0827 |
| | |
| Tacey Clark Clayton | |
| Clayton O'Donnell Walsh & Davis, PLLC | |
| P.O. Box 755 | |
| Tupelo, MS  38802-0755 | |

**and** on the following counsel of record by placing said copy in the United States Mail, postage

prepaid, addressed to him at his usual post office address as follows:

James Mark Shelton
SHELTON & DAWSON, P.A.
P.O. Box 228
Tupelo, MS 38802

THIS the 19th day of July, 2005.

_s/L. Bradley Dillard_____
L. BRADLEY DILLARD