IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**MIKE FORADORI, as Guardian for the**
**Person and Estate of MICHAEL FORADORI, JR.,**
**A Minor, and LANE FURNITURE INDUSTRIES, INC.**          **PLAINTIFFS**

**VS.**                                                **CIVIL ACTION NO. 1:03CV669-MD**

**CAPTAIN D'S, LLC**                                          **DEFENDANT/**
                                                       **THIRD PARTY PLAINTIFF**

**VS.**

**CASTLES & ASSOCIATES, P.A.,**
**JIM WALTER HOMES, INC., JOHN DOES 1-10,**
**and XYZ CORPORATIONS 1-10**                      **THIRD PARTY DEFENDANTS**

<u>**MEMORANDUM IN SUPPORT OF RESPONSE**
**TO CAPTAIN D'S MOTION FOR REMEDIES**</u>

COMES NOW Defendant, Jim Walter Homes, Inc. ("Jim Walter"), by and through counsel, in the above styled and numbered cause of action, and files this its Memorandum Brief in Support of Response to Captain D's Motion for Remedies, and in support thereof, would show unto the Court as follows:

**I.     <u>INTRODUCTION</u>**

The Plaintiff, Michael Foradori, was injured when a Captain D's employee pushed him over a retaining wall located on Jim Walter's property. Foradori initially sued Captain D's for his injuries. After defending the case for several years, Captain D's filed Third-Party Complaints against several other individuals and companies, including Jim Walter.

The case has proceeded through discovery and trial is currently set for October 3, 2005. Currently before the Court is Captain D's Motion for Remedies. The Motion for Remedies arises from a discovery dispute primarily related to two issues in this case: 1)

whether Michael Foradori was standing on Captain D's property at the time he was pushed; and 2) whether or not Jim Walters had in place polices to ensure that its premises were safe at the time Michael Foradori was injured.[1]

Not surprisingly, Captain D's takes the position that Foradori was on Jim Walter's property at the time of his altercation with the Captain D's employee. Furthermore, Captain D's would apparently like to avoid taking the conventional route and actually proving Foradori's location during the trial of this case. Toward that end, it has instituted this contentious procedural Motion, wherein it accuses Jim Walter of 'bandying." (Motion for Remedies, p. 1).

As will be shown below, Captain D's Motion is completely without merit and a gigantic waste of judicial resources and time. Jim Walter requests not only that Captain D's Motion for Remedies be denied, it also requests that counsel for Captain D's be sanctioned, and that Jim Walter be awarded attorney's fees for having to respond to this frivolous motion.

## II.   FACTS AND PROCEDURAL POSTURE

In 2000, the Plaintiff, Michael Foradori, was tragically injured after a Captain D's employee pushed him, causing him to fall over a retaining wall located on Jim Walter's property. As a result of that incident, Foradori is now a quadriplegic.

Foradori originated this cause of action against Captain D's. Over the last three (3) years, Captain D's has sought to shield itself from liability in this case by suing various Third-Party Defendants, including Jim Walter. In fact, when Jim Walter was

---

[1] Perhaps in an effort to bolster this Motion, Captain D's claims that these two issues are central to Jim Walter's defenses to the Third-Party Complaint. (Motion for Remedies , pp. 3-4). That assertion is blatantly misleading. Regardless of whether or not Foradori was on Jim Walter's property when he was pushed, the legal defenses to the Third-Party Complaint still stand and are fully set forth in Jim Walter's Motion for Summary Judgment currently pending before the court.

served with the Third Party Complaint in late 2004, *this was the first time* Jim Walter learned of the incident. For example, it is undisputed that no individuals associated with Jim Walter witnessed the incident, or otherwise have any first hand knowledge of the events leading up to the incident.

After being served with the Third-Party Complaint in October of 2004, both in-house counsel for Jim Walter and the undersigned performed an investigation into the incident. As part of this investigation, counsel for Jim Walter formed the opinion that there existed legitimate issues of fact regarding exactly where Foradori was located when the Captain D's employee pushed him over the retaining wall.

In late 2004, Captain D's propounded the following Requests for Admission:

> **REQUEST FOR ADMISSION NO 9:** Please admit that at the time Michael Foradori was pushed and fell from the subject retaining wall, he was located on Jim Walter's premises.
>
> **REQUEST FOR ADMISSION NO 15:** Please admit that the physical contact between Michael Foradori and Garious Howard which resulted in Garious Howard being convicted of a crime occurred on the Walter's Premises.
>
> **REQUEST FOR ADMISSION NO 16**: Please admit that Walter possesses no evidence indicating that lighting on the Captain D's premises was inadequate for any purpose in December of 2000.

Given the factual disputes regarding Foradori's location at the time he was pushed, as well as the disputes regarding the safety of the Captain D's premises, each of these requests were denied. As stated above, however, no one at Jim Walter had any personal knowledge of the facts and circumstances surrounding the actual event at issue. As such, these denials were based on the investigation conducted by counsel for Jim Walter as well as depositions conducted prior to the time the Responses to the Request for

Admissions were filed. These depositions include, but are not limited to, the depositions of Michael Foradori, witness Al Cannon, and Plaintiff's Expert J. Nigel Ellis.

First, Foradori's testimony indicated that he was on Captain D's property when he was pushed. (Exhibit A, pp. 21-35) As Foradori stated in his deposition:

> Q. (Ms Clayton) – Certainly then looking at Exhibit 8 to your deposition, are you saying that you would have been farther down the grassy slope than is shown on that photograph when the incident occurred?
>
> A. I don't know exactly how far down the slope we was, but I remember there was a parking lot left when we went outside coming towards the road and where you drive in at. And I don't know how far down the slope it was. I remember going outside and standing on the grass and he was standing on the grass. That's all I remember.
>
> Q. Are you talking about Al Cannon was standing on the grass?
>
> A. He wants [sic] standing on the grass and I went out the door and went across the parking lot and stepped on the grass. That's the last thing I remember.
>
> Q. Okay.
>
> A. I was coming outside and stepping on the grass.
>
> Q. So the last thing you remember is just stepping right on the grass?
>
> A. Yes ma'am.

(Exhibit A, pp. 29-30). It is undisputed that one step from the Captain D's parking lot to the grassy slope is on the property of Captain D's, ***not Jim Walter.***

Furthermore, the deposition of witness Al Cannon also raises questions as to Foradori's location when he was pushed. (Exhibit B, pp.37 –40) Also, the deposition of expert witness J. Nigel Ellis establishes potential problems with the lighting at Captain D's. (Exhibit C, pp. 63-67)

4

As this Court can see, the basis for denying the Requests for Admissions included not only the investigation into the incident, but also the above referenced testimony.

Obviously, as discovery progressed Captain D's became very concerned about its ability to prove that Foradori was on Jim Walter's property. As such, when it came time to depose Jim Walter's corporate designees, counsel for Captain D's sought to question these individuals about where Foradori was located when the Captain D's employee pushed him over the retaining wall.

When Captain D's noticed the 30(b)(6) deposition of Jim Walter, the notice set forth thirty-five (35) areas of inquiry. (Exhibit D) Many of these areas were overbroad, not reasonably calculated to lead to the discovery of admissible evidence, and were therefore improper areas of inquiry. Jim Walter's filed its Responses and Objections to that Notice approximately 10 days prior to the beginning of depositions. (Exhibit E). Captain D's next belatedly filed a Third Notice of Deposition approximately a week before the scheduled deposition. (Exhibit F).

At the actual depositions, counsel for Captain D's pressed the 30(b)(6) designees to provide a factual basis for the denials of the Requests for Admissions. ***This is where problems began to arise***. Obviously, as stated above, the individuals deposed had no first hand knowledge regarding the actual incident. As such, when pressed on the reason for denying the request for admissions, the individuals were forced to rely, in part, on their attorney's investigation and advice. The depositions became heated after counsel for Captain D's pressed the Jim Walter employees to disclose confidential attorney/client communications. Nevertheless, a Jim Walter designee, Billy Philbreck, did specifically state in his deposition why he believed that Foradori was on Captain D's property at the

5

time the physical contact ensued.  This testimony was obviously based on what he had been told as well as the actual allegations contained in the Complaint.

> Q. (Mr. Hathaway) What is the factual basis for the denial that Michael Foradori was on the Jim Walter's premises at time he has pushed and fell from the retaining wall? What is the factual basis for that denial?
>
> A. I don't know.
>
> Q. Do you know where he was?
>
> A. Do I know where who was?
>
> Q. Mr. Foradori when he was pushed, whose property was he on.
>
> A.  He was on Captain D's property.
>
> Q. What is that based on?
>
> A. Just –
>
> Q. What is that based on, sir?
>
> A. Because he struck the ground on the parking lot of Jim Walter Homes.
>
> Q. So tell me how that means he was pushed from the Captain D's – that he was on the Captain D's property when he was pushed?
>
> A. It was my understanding that he was a customer of Captain D's.
>
> Q. That's not my question. My question was –
>
> A. That's how I know.

(See Deposition excerpts of Bill Philbeck, attached hereto as Exhibit G, pp. 132-133).

Undeterred, counsel for Captain D's continued to press the issue. Although Mr. Philbeck did his best to fully and completely respond to the questions presented at the deposition, counsel for Captain D's became angry and even verbally abusive, prompting this exchange between counsel:

6

> Ms. Clayton: Mr. Hathaway. Mr. Hathaway, if you stand or if you scream at this witness on more time, I am going to terminate this deposition.
>
> Mr. Hathaway: Do whatever you feel is in the best interest of your client –
>
> Ms. Clayton: I most certainly will.
>
> Mr. Hathaway: – and at your peril
>
> Ms. Clayton: I will do it at your peril because I think I have plenty of witnesses here at the way you have acted today who will – if you look around the room at the heads nodding –testify on behalf of the way you have acted toward this witness. I'm not going to put up with it.
>
> Mr. Hathaway: Don't put up with it, Tacey.
>
> Ms. Clayton: I won't
>
> Mr. Hathaway: Do whatever you feel is necessary. Nobody is asking you to do anything other than –
>
> Ms. Clayton: Don not stand and scream at the witness. It is not appropriate, and it is not civilized behavior. It is rude.

(Exhibit G, pp. 136-137).

Turning back to the questioning at hand, Captain D's also sought to question Jim Walter about the policies and procedures in place during 2000 relating to inspection and safety of the premises. Jim Walter produced several manuals on the subject and Mr. Philbeck spoke at length about the procedures in place in 2000 at his deposition. (Exhibit G, pp. 58-80; 100-130).

After the depositions concluded, counsel for Captain D's threatened to file a Motion to Compel. The undersigned attempted to work with counsel opposite to clarify the actual issues in dispute. Counsel for Captain D's refused, and proceeded with the filing of the Motion without making a good faith effort to resolve this discovery dispute. (See Affidavit of Tacey Clayton, Exhibit H with attached e-mails.)

### III.     ARGUMENT

Captain D's is concerned that it will not be able to prove at trial that Michael Foradori was on Jim Walter's property at the time its employee pushed him over the retaining wall. As such, Captain D's is trying to accomplish through this Motion for Remedies what it otherwise would have to prove at trial.

The legal arguments presented in the Motion for Remedies are misplaced. Furthermore, Captain D's has selectively chosen certain deposition excerpts from this case in an effort to cast Jim Walter and its counsel in a negative light. Captain D's, however, has conveniently chosen to ignore its own actions throughout the discovery process. In fact, counsel for Captain D's has engaged extensively in the same actions that it now claims are a violation of the discovery rules.

Consequently, in what follows below, Jim Walter will not only refute the factual and legal assertions in the Motion for Remedies, but also give the Court a clearer picture of the deposition testimony, as well as the actions of counsel for Captain D's.

### 1.     GOOD FAITH CERTIFICATE

First, it is necessary to address the affidavit of Brad Hathaway, counsel for Captain D's. In this affidavit, Mr. Hathaway complains that he could not obtain a good faith certificate from the undersigned.

Nothing could be further from the truth. Counsel for Jim Walter all but begged Captain D's to tell her the basis of the Motion so that she could determine whether it could be worked out without judicial intervention. Those pleas were rejected. (Exhibit H with attached e-mails).

As this Court can see, it was Captain D's who refused to tell Jim Walter the specifics about the "supposed discovery violation." As such, counsel for Jim Walter simply could not sign a good faith certificate saying that Captain D's had tried to work through the discovery dispute since that would not be a truthful representation. The failure to work toward a good faith resolution of the discovery dispute is alone a sufficient basis to deny the Motion for Remedies.

The only rational explanation for Captain D's behavior is that it simply did not want to work through the discovery dispute and had already set out on its course of filing the instant Motion. Once again, Captain D's is trying to accomplish through a procedural tactic what it obviously is concerned it may not be able to prove at trial.

2.   **UNCLEAN HANDS / EQUITABLE ESTOPPEL**

One of the main contentions in the Motion for Remedies is that Jim Walter tried to hide behind the attorney/client privilege so that Captain D's "supposedly" could not obtain the facts necessary to prosecute its Third Party Complaint. Counsel for Captain D's boldly states to the Court that a witness is not allowed to escape a fact question based on the attorney/client privilege. Captain D's, however, is not making this argument with "clean hands."

Captain D's seemed perfectly content with making an objection based on the attorney/client privilege when it asserted said objection numerous times at the deposition of its own 30(b)(6) designees. (See Deposition Excerpts of Terry Poulson, Exhibit I, pp. 148-167.) (See also Deposition Excerpts of Phillip Purcell, Exhibit J [Volume 1] pp. 21-33, 83-88; and Exhibit K [Volume 2] pp. 25-40, 47-54, 68-70)

As this Court can see, counsel for Captain D's has done the exact same thing he asserts warrants sanctions for Jim Walter's attorneys.  It is simply unbelievable that Captain D's would take the time and energy to file a thirty-one (31) page Motion complaining of the very actions it has itself employed.

Based on these actions, Captain D's should be estopped from pursuing this Motion. *Blacks Law Dictionary* defines equitable estoppel as "[t]he doctrine by which a person may be precluded by his act or conduct, or silence when it is his duty to speak, from asserting a right which he otherwise would have had....".

Clearly, counsel for Captain D's should not be allowed to object to the very action he himself undertook when his clients were deposed.  Should Captain D's prevail on its Motion for Remedies, Jim Walter could in turn file the exact same Motion for Remedies, and ask for similar relief if Captain D's assertions are correct. (Jim Walter, of course, has tried to avoid such petty motions that waste the Court's time.)  All of this can and should be avoided by simply forcing Captain D's to prove at trial facts that are clearly in dispute.

## 3.   ATTORNEY CLIENT PRIVILIGE

Turning to crux of the Motion for Remedies, Captain D's argues that Jim Walter "hid" behind the attorney/client privilege when asked to provide a factual basis for the denials of the requests for admission.

First, the law clearly allows a corporation to protect the communications between a client and his attorney.  Furthermore, and what is clearly at issue in this case, is whether or not counsels for Jim Walter should be forced to reveal their *mental impressions.*

In the patient infringement action of the Smithkline Beecham Corp. v. Apotex Corp., 2000 WL 116082, *9 (N.D.III.), the court stated that "A Rule 30(b)(6) deponent's

testimony does not represent the knowledge or opinions of the deponent, but that of the business entity.  In effect, the deponent is 'speaking for the corporation,' giving the corporation's position on the topic.  The deponent must testify to both the facts within the knowledge of the business entity and the entity's opinions and subjective beliefs."

However, the court noted that the discovery process could not be *wielded as a club to require unduly burdensome action to be taken by the deponent in preparation*.  "Consequently," said the court, "the recipient of a Rule 30(b)(6) request is not required to have its counsel muster all of its factual evidence to prepare a witness to be able to testify regarding a defense or claim.  This rule holds especially true when the information sought is likely discoverable from other sources."  Smithkline Beecham Corp., 2000 WL 116082, at *9.

The Smithkline case concludes that a 30(b)(6) topic of "Smithkline's Responses to Defendants' Interrogatories and Requests for Production, along with the subjects identified therein" was *overbroad, unduly burdensome and an inefficient means through which to obtain otherwise discoverable information, which could have more easily and efficiently been obtained through interrogatories.*  Id. at *10. (emphasis added) More importantly, this 30(b)(6) topic was seen as *infringing upon the attorney-client privilege and work product doctrine.*  The court stated:

> As Defendants are aware, answering requests for production and interrogatories customarily is performed with the assistance of counsel.  Thus, the proposed area of inquiry improperly trespasses into areas of work product and attorney-client privilege.  In such cases, courts will not permit discovery implicating privilege concerns absent a showing that the information sought is not discoverable by any other means.

Id. at *9.

11

With respect to the protection of counsel's mental impressions and opinions, the Fifth Circuit has also recognized that "an attorney's thoughts are inviolate." Nguyen v. Excel Corp., 197 F.3d 200, 210 (5th Cir. 1999)(quoting Hickman v. Taylor, 329 U.S. 495, 511, 67 S.Ct. 385, 91 L.Ed. 451 (1947)). "Even though an attorney's mental impressions and opinions fall outside of the attorney-client privilege, they also fall outside the arena of discovery as their disclosure would contravene the public policy underlying the orderly prosecution and defense of legal claims." Nguyen, 197 F.3d at 210.

Further, the Fifth Circuit has noted that the attorney/client privilege "shields communications from the lawyer to the client only to the extent that these are based on, or may disclose, confidential information provided by the client or contain advice or opinions of the attorney." Wells v. Rushing, 755 F.2d 376, 379 n.2 (5th Cir. 1985).

Fifth Circuit district courts have also recognized that the attorney-client privilege protects advice of counsel. In In re LTV Securities Litigation, 89 F.R.D. 595, 603 (N.D.Tex. 1981), the court clearly noted that advice of counsel is protected by the attorney-client privilege. The U.S. District Court for the Eastern District of Texas has reaffirmed that "Legal advice of counsel is at the very heart of the attorney-client privilege and is clearly protected." Thurmond v. Compaq Computer Corp., 198 F.R.D. 475, 482 (E.D.Tex. 2000)(quoting B.C.F. Oil Refining, Inc. v. Consolidated Edison Co. of N.Y., 168 F.R.D. 161, 165 (S.D.N.Y. 1996)).

As stated above, no one at Jim Walter has any personal knowledge regarding the facts and circumstances related to the actual incident at issue since it happened four (4) years before the Company was even served with the Third Party Complaint. For this

reason, Jim Walter employees were at least, in part, forced to rely on the ***mental impressions and advice*** of its attorneys in reaching conclusions regarding the denials for the requests for admission.

What Captain D's is trying to discover in this case is not what facts Jim Walter relied on in denying the requests for admissions, as those facts are ***clearly ascertainable*** from the depositions already taken in this case, i.e. Michael Foradori, Al Cannon, and Nigel Ellis.[2] On the contrary, Captain D's wants to obtain information relating to the "accumulation" and "marshalling" of those facts into a legal and factual defense to the Third-Party Complaint.  Disclosure of these attorney mental impressions is clearly not discoverable under the discovery rules.

Regardless, Captain D's is making a "mountain out of a molehill."  Jim Walter designee Billy Philbeck gave his opinion regarding the location of Foradori when he was pushed.  He testified in no uncertain terms that he felt that since Foradori was a customer of Captain D's and pushed by a Captain D's employee that he must have been on Captain D's property when the altercation began.  While Captain D's may not like the testimony given during the discovery process, this does not mean that Jim Walter is in violation of Rule 30(b)(6).

**4.     POLICIES AND PROCEDURES**

The following Jim Walter employees testified regarding the policies and procedures of Jim Walter in inspecting and maintaining its property from 2000 to 2004: Woody Jones; Magil Hawri; Bill Philbreck; James Skomp; Vance Nelson; and Jason Brewer.

---

[2] This Court should also keep in mind that these depositions were taken ***before*** the responses to the request for admissions was filed.  As such, it is obvious that a basis for the denials exist.

These Depositions took approximately three and a half (3 ½ ) days. The areas of inquiry were fully covered in the 30(b)(6) and in the individual depositions. Captain D's left no stone unturned. There was not on single area of inquiry not fully explored.

Specifically, Jason Brewer testified to those policies and practices from the time he arrived at the Tupelo location. The truth of the matter is that Mr. Brewer was questioned individually for approximately 3 ½ hours and thoroughly discussed the policies and practices at the Tupelo location. He was the first deponent in the Jim Walter series of deponents. He spoke at length about the policies and practices and how he carried them out. Jim Walter chose to designate him as the corporate representative for only the period he had been at the Tupelo branch. In turn, Mr. Philbeck testified regarding the policies and practices prior to Mr. Brewer's arrival at the Tupelo site.

When Captain D's represents to this Court that no designee of Jim Walters testified to the policies and practices of Jim Walters in inspecting and maintaining its property form 2000 –2004, Captain D's is apparently overlooking, or perhaps ignoring the testimony of Mr. Bill Philbeck, *supra*, given on that issue under the most trying of circumstances. As this Court can see from a review of Mr. Philbreck's testimony, Jim Walter has thoroughly and completely testified regarding the policies in place in 2000.

## CONCLUSION

Jim Walter was justified in denying the requests for admission, as the discovery process has revealed numerous issues relating to the location of Foradori when he was pushed and the adequacy of the lighting on the Captain D's premises. Furthermore, Jim Walter designees fully and completely testified as to the policies and procedures in place in 2000 dealing with inspection and safety.

While it is true that no one at Jim Walter has any knowledge, corporate or otherwise, regarding the specific facts of what happened on the night in question, this does not mean that the denials were unjustified. These witnesses were entitled to rely on their attorney's mental impressions and advice in answering the questions proposed to them at the various depositions. Furthermore, Jim Walters will be able to use other witnesses, who have testified that Foradori's location when is not ascertainable with any amount of certainty.

To put it simply, Captain D's knows that Foradori's location at the time of the accident is one of the most hotly disputed issues in this case. Captain D's should be forced to prove their case in a court of law, not by frivolous procedural motions. Jim Walter respectfully requests that the Motion for Remedies be denied in all respects, that counsel for Captain D's be sanctioned, and that Jim Walter be awarded attorney's fees related to the filing of this Response.

RESPECTFULLY SUBMITTED, this the 1st day of August, 2005.

BY:   s/ Tacey Clark Clayton
TACEY CLARK CLAYTON (MSB #8472)
Attorney for Defendant/Cross-Defendant
Jim Walter Homes, Inc.

OF COUNSEL:
CLAYTON O'DONNELL WALSH &DAVIS, PLLC
Attorneys at Law
115 North Broadway Street
Post Office Box 755
Tupelo, Mississippi 38802
Tel. (662) 620-7938
Fax (662) 620-7939

**CERTIFICATE OF SERVICE**

I, Tacey Clark Clayton, one of the attorneys for Third Party Defendant Jim Walter Homes, Inc., do hereby certify that I have this day served a true and correct copy of the above and to the following counsel via electronic filing only:

| | |
|---|---|
| R. Bradley Best | bradbest@holcombdunbar.com |
| Robert H. Burress, III | bburress@langstonlaw.com |
| Lamar Bradley Dillard | bdillard@mitchellmcnutt.com |
| Bradley Farel Hathaway | bhathaway@campbelldelongllp.com |
| Elizabeth Pugh Odom | epo@kullmanlaw.com |
| David Zachary Scruggs | zachscruggs@scruggsfirm.com |
| Taylor B. Smith | tbs@kullmanlaw.com |
| Michael Noel Watts | mwatts@holcombdunbar.com |

I hereby further certify that I have served same via United States mail to non-ECF participants:

J. Mark Shelton, Esq.
Jana Dawson, Esq.
P.O. Box 228
Tupelo, Mississippi  38802

This the 1st day of August, 2005.

                                           _s/Tacey Clark Clayton_____
                                           TACEY CLARK CLAYTON