UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

MIKE FORADORI, GUARDIAN OF THE
PERSON AND ESTATE OF MICHAEL
FORADORI, JR.                                                                                          PLAINTIFF

V.                                                                                                     NO. 1:03cv669

CAPTAIN D'S, LLC                                                                                       DEFENDANT

V.

CASTLE & ASSOCIATES,                                                              THIRD PARTY DEFENDANTS
JIM WALTER HOMES, INC.,
JOHN DOES 1-10 AND
XYZ CORPORATIONS 1-10

## ORDER

This cause comes before the court on defendant Captain D's motion for directed verdict/judgment as a matter of law.[1] In its prior order denying summary judgment, the court declined to dismiss any of plaintiff's claims, although it later partially reconsidered this ruling and dismissed plaintiff's premises liability claims prior to trial. In so ruling, the court noted its intention to wait until the presentation of testimony at trial to determine which, if any, of plaintiff's remaining claims should be submitted to the jury and which claims should be dismissed.

After consideration of the testimony presented during plaintiff's case in chief, the court concludes that, even considering the evidence in the light most favorable to plaintiff, no

---

[1]Fed.R.Civ.P. 50(a)(1) provides that, "[i]f during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party." In ruling upon a motion for judgment as a matter of law, the court must consider the evidence in the light most favorable to the non-moving party. *Bank of Saipan v. CNG Financial Corp.*, 380 F.3d 836, 840 (5th Cir. 2004).

reasonable juror could conclude that Captain D's is vicariously liable for the actions of its employee Garious Harris in physically assaulting Foradori. In so concluding, the court would note that an intentional tort may be considered to be within the course and scope of employment for *respondeat superior* purposes, but only if the employer authorized the tortious act in advance, ratified the act after its commission, or if the act was committed within the scope of employment. *Thatcher v. Brennan*, 657 F. Supp. 6, 9 (S.D. Miss. 1986)(*citing Odier v. Sumrall*, 353 So.2d 1370 (Miss.1978)).

In *Thatcher*, Judge Tom S. Lee granted summary judgment in a case where a traveling pharmaceutical salesman intentionally attacked a stranger in what appears to have been a "road rage" incident of sorts. In so ruling, Judge Lee wrote as follows:

> In the instant case, Brennan was authorized, expected, and even required to drive an automobile as part of his employment. However, he was not authorized to assault other persons, and there is nothing in the previous relationship between Brennan and Mead Johnson which would indicate that such conduct was acceptable. Moreover, the act is not one which is commonly performed by Mead Johnson sales personnel, nor can it be said to be a "normal" method of selling, or similar to acts which Brennan was authorized to perform. The most that can be said is that the assault was within the "time and place" of employment. The "purpose" of the assault was not to further any of Mead Johnson's interests but, rather, was intended to satisfy Brennan's purely personal objectives.

*Thatcher*, 657 F.Supp. at 9.

Similarly, in *May v. VfW Post # 2539*, 577 So. 2d 372, 377 (Miss. 1991), the Mississippi Supreme Court held that an off-duty employee's fistfight with an old adversary did not further the employer's business and that *respondeat superior* was therefore inapplicable. The Supreme Court in *May* also found that the plaintiff's negligence claims against the employer lacked merit, inasmuch as the employee had never exhibited a propensity for violence and showed no violent intentions or behavior prior to the incident. *Id.* The Supreme Court in *May* further observed that "the fight occurred in such a quick manner" that the employer "could not have done anything to

2

prevent it" and that "the security personnel acted promptly in breaking up the fight." *Id.*

In light of the foregoing authority, the court concludes that no triable fact issues exist with regard to plaintiff's vicarious liability claims in this case, inasmuch as Garious Harris was plainly not furthering any of Captain D's objectives in assaulting Foradori. It is apparent that a plaintiff faces a difficult burden in attempting to impose vicarious liability upon an employer for an intentional and criminal assault such as that committed by Harris in this case, and plaintiff has failed to meet its heavy burden in this case. Obviously, Captain D's business of selling seafood meals was by no means furthered by Harris' actions, and the court sees no valid argument that Harris was acting in the course and scope of his employment at the time he assaulted Foradori.

The court does conclude, however, that triable fact issues exist with regard to Captain D's liability for its own negligence in failing to properly train its employees and in failing to properly supervise them on the night of the assault. In so concluding, the court would note that testimony at trial indicated that the assault in this case did not arise "out of the blue," but, rather, was preceded by a period of verbal confrontation between Foradori and Al Cannon, a Captain D's employee. Foradori testified that this confrontation was a loud one which should have been overheard by Captain D's management personnel, and the testimony at trial indicated that restaurant chef Jeremy Shell, who was in the kitchen area, overheard the verbal confrontation in the dining area and went out to witness what he believed would be a fight.[2]

Moreover, Captain D's manager Peggy King admitted at trial that she heard the verbal exchanges between Foradori and Cannon, and she further testified that she ordered the young men to take their dispute outside. King maintained that she only felt that "horseplay" was taking

---

[2]The court is aware that some of the witnesses in this case provided inconsistent accounts of the events, but the credibility of these witnesses and their testimony are clearly jury issues.

place between the young men, but she conceded that she did not investigate the matter further to determine the true facts in this regard. In the court's view, the aforementioned facts create fact issues as to whether, unlike the sudden assault in *Mays*, Captain D's management either knew or, in the exercise of reasonable supervision should have known, of the confrontation which was brewing in their restaurant.

In the court's view, this case is also distinguishable from *Mays* based upon the fact that the evidence in this case appears to establish a widespread failure among multiple Captain D's employees to behave in an appropriate manner in this case. Obviously, it is not proper behavior for a Captain D's employee such as Cannon, off-duty or not, to approach a customer on restaurant premises in a hostile manner and to encourage him to fight. The fact that Cannon apparently felt comfortable in behaving in such an improper manner on restaurant premises raises troubling questions regarding the level of training, supervision and discipline which existed at the Captain D's franchise in question. The fact that yet another employee - Harris- apparently felt comfortable in violently assaulting a customer on or near restaurant premises strengthens the court's conclusions in this regard. Finally, the fact that a restaurant chef's instinctive reaction upon learning of the fight was to go witness the altercation rather than break it up or notify management strongly supports a conclusion that there was a general failure on the part of Captain D's to properly supervise and train their employees at this particular franchise.

It seems very likely that Captain D's management would have eventually learned of Harris' violent assault on Foradori, which occurred during business hours just outside the restaurant. The fact that Harris nevertheless elected to commit this assault raises questions in this court's mind as to whether Captain D's management had adequately informed Harris of the adverse consequences which would result if he behaved in a violent manner towards a customer.

4

The court's skepticism in this regard is strengthened by the fact that King testified that, even after Foradori was injured, she never directly asked Harris whether he had assaulted Foradori. Indeed, King testified that she never interviewed *any* of her employees about the accident.

Considered as a whole, King's testimony at trial appeared to reflect a rather passive managerial approach which, in the court's view, may well have contributed to the tragic injuries suffered by Foradori. In light of the foregoing, the court finds Captain D's argument that it should somehow be held completely blameless for the level of training and supervision which it provided at its restaurant to be completely unavailing. The court therefore declines to dismiss plaintiff's negligent training and supervision claims against Captain D's, although it will, as stated previously, grant defendant's motion to dismiss plaintiff's vicarious liability claims based upon Harris' intentional assault.

It is therefore ordered that defendant's motion for directed verdict/judgment as a matter of law is granted as to plaintiff's vicarious liability claims, but the court declines to grant Captain D's motion for directed verdict as to plaintiff's negligent training and supervision claims.

SO ORDERED, this the 11th day of October, 2005.

       **/s/ Michael P. Mills**
       **UNITED STATES DISTRICT JUDGE**